# Illinois Official Reports

## Appellate Court

***Bowman v. Chicago Park District*, 2014 IL App (1st) 132122**

| | |
|---|---|
| Appellate Court Caption | ARTENIA BOWMAN, Individually and as Mother and Next Friend of Cheneka Ross, a Minor, Plaintiff-Appellant, v. THE CHICAGO PARK DISTRICT, a Municipal Corporation, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-2122 |
| Filed | September 5, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the broken ankle plaintiff's 13-year-old daughter suffered while using a slide in one of defendant's city parks, the trial court erred in entering summary judgment for defendant on the ground that the child was not an intended user of the slide, which was designed for children under 12 years old, since defendant failed to cite any case in which a child was charged with the responsibility of knowing city ordinances without a sign or other notice and defendant did not inform any park users, by any means, that the park and slide were only intended for children under 12; therefore, the cause was remanded to allow the trial court to decide whether the slide's condition was open and obvious and whether defendant's failure to repair the slide after receiving notice was willful and wanton conduct. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-7865; the Hon. Kathy M. Flanagan, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on Appeal

Paul A. Greenberg, of Briskman Briskman & Greenberg, of Chicago, for appellant.

George P. Smyrniotis, Robert L. Raymond, and Marie Christelle Levesque, all of Chicago Park District, of Chicago, for appellee.

Panel

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice Palmer and Justice Taylor concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff Artenia Bowman, individually and as mother and next friend of Cheneka Ross, a minor, filed suit in the circuit court of Cook County against the Chicago Park District (CPD) alleging willful and wanton conduct for failing, for almost a year, to repair a damaged slide. Plaintiff's daughter, Cheneka Ross, age 13, was going down a slide on April 21, 2011, when her foot became caught in a hole in the plastic at the bottom of the slide, resulting in a fractured ankle. Defendant CPD owns the property and maintains the playground equipment, including the slide.

¶ 2    Defendant filed a motion for summary judgment (735 ILCS 5/2-1005 (West 2010)) claiming: (1) that it did not owe any duty to Cheneka because she was not an intended user of the slide since she was 13 years old and the slide was intended for children aged under 12; and (2) that the hole at the bottom of the curved slide was an open and obvious risk that the 13-year-old should have avoided. Plaintiff, in her response to defendant's motion for summary judgment, claims: (1) that defendant failed to establish as a matter of law that CPD had designated the park and the slide for only children under 12 years old; (2) that the danger created by the hole at the bottom of the curved slide was not open and obvious; and (3) that CPD's failure to repair the slide, after being informed almost a year earlier of the danger, constituted willful and wanton conduct.

¶ 3    The trial court granted defendant's motion for summary judgment, finding that 13-year-old Cheneka had violated a CPD ordinance by using a slide that had been designed for children under 12 years old, although there were no signs to indicate an age limit. Since the trial court found that Cheneka was not an intended user of the slide, it did not discuss whether the damage was open and obvious or whether CPD's failure to repair the slide was willful and wanton conduct.

¶ 4    On this direct appeal, plaintiff argues: (1) that the trial court erred by granting defendant summary judgment on the basis that 13-year-old Cheneka was not an intended user of defendant's slide; (2) that the danger created by the hole at the bottom of the curved slide was not open and obvious; and (3) that CPD's failure to repair the slide, after being informed of its condition almost a year earlier, constituted willful and wanton conduct.

¶ 5    For the following reasons, we find the trial court erred in granting summary judgment on the basis that Cheneka was not the intended user of the slide and reverse. We remand for the

trial court to decide whether the slide's condition was open and obvious and whether CPD's failure to repair the slide after being notified was willful and wanton conduct.

¶ 6                                    BACKGROUND
¶ 7                                  I. The Complaint
¶ 8        The complaint at issue on this appeal is plaintiff's second amended complaint, which was filed on March 1, 2012. The suit seeks damages for injuries sustained by plaintiff's daughter, Cheneka, when she damaged her ankle on a park slide on April 21, 2011. The complaint alleges that Cheneka was using the slide when her foot came in contact with a hole that caused a fracture in her ankle and that defendant CPD was aware that the slide was dangerous and had failed to repair it. Count I alleges defendant acted willfully and wantonly toward users of the slide by failing to repair the slide even though it had received numerous complaints from the community. Count II sought recovery on behalf of her daughter's medical expenses under the Rights of Married Persons Act, commonly known as the Family Expense Act. 750 ILCS 65/15 (West 2010).

¶ 9                        II. Defendant's Motion for Summary Judgment
¶ 10        On January 13, 2013, defendant, as noted, filed a motion for summary judgment, claiming: (1) that it did not owe any duty to Cheneka because she was not an intended user of the slide; and (2) that the slide was an open and obvious risk that the 13-year-old should have avoided.
¶ 11        CPD argued that it had an ordinance stating that children age 12 and older should not use playground equipment designed for children under the age of 12. CPD claims that, since Cheneka was 13 years old, she violated the ordinance, and CPD was immune from liability.
¶ 12        CPD also claimed that the danger at the bottom of the curved slide was open and obvious and that the 13-year-old should not have used the slide because a reasonable child would have avoided it. CPD also claimed that, since the 13-year-old was unsupervised, she should be old enough to appreciate obvious risks; however, issues of supervision were not raised on appeal.
¶ 13        Plaintiff responded to the motion contending that defendant had failed to establish that the 13-year-old was not the intended user of the slide. She claimed that the park was open to the public and no sign was present in the park prohibiting children age 12 and older from using the slide. Plaintiff also contended that the hole at the bottom of the curved slide was not open and obvious because she was unable to see the hole prior to being injured. The slide was curved, which made it difficult for children to observe what was in front of them.

¶ 14                                    III. Exhibits
¶ 15                            A. Cheneka Ross's Deposition
¶ 16        Cheneka testified in a discovery deposition that, on April 21, 2011, she went with friends to a park located at 1420 North Artesian Avenue[1] to play a game of tag. Most of her friends were

---

[1]The parties agree that the park is known as Park 399.

several years younger than her, including her brother. It was around 7 p.m. and starting to become dark. She had played at this park before and had been there several times. While playing tag, Cheneka ran to the slide to avoid being tagged by one of her friends. She went up the slide and when she descended, her foot became caught in a hole in the plastic, at the bottom of the slide, causing a fractured ankle and requiring surgery.

¶ 17    Cheneka testified that she did not observe the hole at the bottom of the slide before her foot became caught. She did not observe the crack from the top of the slide and identified a photograph of the slide. The photograph, which was introduced at the deposition, showed that the slide was curved, and the top of the slide did not line up with the bottom.

¶ 18    <center>B. Artenia Bowman's Affidavit and Deposition</center>

¶ 19    Artenia Bowman is Cheneka's mother. In an affidavit attached to plaintiff's response to the motion for summary judgment, Cheneka's mother alleges that there were no signs posted which designated the age group for the playground. Specifically, there were no signs stating that the play equipment was intended for those 2 to 12 years old[2] and that those 13 years or older were prohibited.

¶ 20    Cheneka's mother testified that, after the incident, the park had been renovated, and after the renovation, new signs were posted stating that the park was intended for children under the age of 12.

¶ 21    <center>C. Juan Moreno's Deposition</center>

¶ 22    Juan Moreno lives about 300 feet away from the park. Moreno testified in a discovery deposition that he goes to the park on a daily basis for a walk and some fresh air. He observed the damage to the slide for about a year and a half. He testified that the slide was "cracked really bad," and it had a lot of water buildup at its bottom. Moreno had called 311 and was directed to CPD several times to report the broken slide's condition before Cheneka was injured. Moreno testified that he spoke to an unnamed CPD supervisor in person, about a year prior to the incident, to complain about the slide. He also has contacted Alderman Roberto Maldonado's office three times regarding the condition of the slide.

¶ 23    Moreno testified that he still observed children playing on the broken slide despite its condition. He also mentioned that he observed older children at the park.

¶ 24    <center>D. Kathleen Oskandy's Deposition</center>

¶ 25    Kathleen Oskandy, Alderman Maldonado's chief of staff, spoke to Cheneka's mother after the incident. Oskandy testified in a discovery deposition that she informed Cheneka's mother that Moreno had already filed complaints with the alderman's office about the slide before the incident. Oskandy reported the condition of the slide to CPD in July 2010 after being informed by Moreno.

---

[2]We note that this age range conflicts with the Chicago Park District Code (CPD Code), which states certain parks are designated for children *under* age 12. Chicago Park District Code ch. 7, § B(3)(e) (amended July 28, 1992).

¶ 26    Oskandy provided a computer printout of the complaints regarding the park maintained by her office. It was a timeline of Moreno's initial complaint, along with subsequent comments. The log showed a complaint made on July 29, 2010, about the slide's condition and additional comments when CPD was contacted. On August 24, 2010, the log stated: "slide boarded up and waiting for repair." One week prior to the incident in April 2011, the log stated, "slide west of park still broken." On April 25, 2011, the log mentioned that Cheneka was injured and "[CPD] replaced slide for repair."

¶ 27                          E. Gladys Ruiz's Deposition

¶ 28    Gladys Ruiz works in Alderman Maldonado's office answering calls and inputting data. Ruiz explained in a discovery deposition the procedure of how staff entered complaints in the office computer. On July 29, 2010,[3] Moreno had called the office, and Ruiz logged his complaint about the slide. She made a note about the damaged slide in the computer log. Ruiz interpreted the log provided by Oskandy and explained that Oskandy was the one who closed out the file on August 27 when Oskandy contacted CPD.

¶ 29                     F. Robert Rejman's Affidavit and Deposition

¶ 30    Robert Rejman is the director of development and planning for CPD. His duties include developing policies for park district facilities and establishing and improving playgrounds. In an affidavit attached to defendant's motion for summary judgment, Rejman stated that "he was personally familiar with Park 399" and he "reviewed the plaintiff's photographs of the playground equipment and can say that this equipment is commonly in the design of playgrounds that are intended for users between the ages of two to twelve." He additionally stated that a sign was posted at the park indicating that playground equipment is designed for children aged 2 to 12[4]; however, his affidavit did not state when the sign was posted or whether the sign was posted at the time of 13-year-old Cheneka's injury.

¶ 31    Rejman later testified in a discovery deposition that he visited the park only once at some unknown point before the incident. He stated that he was unaware if there were any signs posted outside the park designating the age range when he was there. We observe that this testimony conflicts with the affidavit, where he stated that a sign was posted in the park. Rejman also stated that he was unaware if there had been any recent improvements to the park. Rejman characterized the park as a "play lot," a park with most equipment for children age 12 and under. He testified there are different areas for younger children because "it's safer for kids within a certain age groups to have space to play *** within that age group. *** It's important to [parents] to provide that safe zone of play for younger children."

¶ 32                          G. John Shostack's Deposition

¶ 33    John Shostack is a maintenance foreman for CPD's natural resources landscape maintenance department. He testified in a discovery deposition that he was assigned to the park

---

[3]The computer printout of the log shows a date of July 29, but Ruiz's deposition testimony states July 19.

[4]We note that this age range conflicts with the CPD Code, which states certain parks are designated for children *under* age 12. Chicago Park District Code ch. 7, § B(3)(e) (amended July 28, 1992).

in 2010, but was not assigned there at the time of the incident in 2011. Shostack claimed to have stopped by the park at least once a week when he was assigned to the park. He admitted that he was aware of the slide's damaged condition in 2010. Shostack placed a work order in 2010 to have the slide repaired; however, it was not his job to follow up, as that task was assigned to a different department. Shostack testified that he remembered seeing a wooden board placed at the top of the slide to prevent use, and yellow caution tape surrounded the slide. Shostack could not recall how long the board or caution tape was present on the slide. He would put up caution tape as a courtesy on one day, and it would be absent the next time he was there. He also testified that he could not recall if any actual repairs were done on the slide while he was assigned to the park.

¶ 34                    IV. Trial Court's Order Granting Summary Judgment

¶ 35        On June 10, 2013, the trial court granted summary judgment to defendant CPD, finding that Cheneka had violated a CPD ordinance and was not an intended user:

> "Here, there is a dispute as to whether the subject playground displayed a sign restricting the use of the playground to persons under the age of twelve. However, the Chicago Park District enacted an ordinance restricting the use of playgrounds to children under the age of twelve. The ordinance itself is the manifestation of the Park District's intent *vis-a-vis* the use of the playground. As such, whether or not there was a sign on the subject playground, the minor Plaintiff here was not an intended user of it."

¶ 36        The trial court did not discuss whether the damage to the slide was open and obvious, or whether CPD's failure to repair the slide was willful and wanton conduct. The trial court granted summary judgment solely on the ground that the 13-year-old was not an intended user because of her age.

¶ 37        On July 13, 2013, plaintiff filed a notice of appeal, and this appeal followed.

¶ 38                                    ANALYSIS

¶ 39        Plaintiff Artenia Bowman appeals from an order of the circuit court of Cook County granting summary judgment in favor of defendant Chicago Park District.

¶ 40        On this appeal, plaintiff argues: (1) that the trial court erred by granting defendant summary judgment on the basis that 13-year-old Cheneka was not an intended user of defendant's slide; (2) that the danger created by the hole at the bottom of the curved slide was not open and obvious; and (3) that CPD's failure to repair the slide, after being informed of its condition almost a year earlier, constituted willful and wanton conduct.

¶ 41        With respect to the first issue, defendant claims that Cheneka was not the intended user of the slide, and therefore, it is not liable. For the following reasons, we find the trial court erred in granting summary judgment on this ground and reverse. We remand for the trial court to decide whether the slide's condition was open and obvious and whether CPD's failure to repair the slide after being notified was willful and wanton conduct.

¶ 42                                I. Standard of Review

¶ 43        A trial court is permitted to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

735 ILCS 5/2-1005(c) (West 2010). The trial court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a trial court's decision to grant a motion for summary judgment *de novo. Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 44 "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp.*, 154 Ill. 2d at 102. However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). A defendant moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The defendant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas*, 374 Ill. App. 3d at 624 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). In other words, there is no evidence to support the plaintiff's complaint.

¶ 45 " 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). " 'To withstand a summary judgment motion, the nonmoving party need not prove his case at this preliminary stage but must present some factual basis that would support his claim.' " *Schrager*, 328 Ill. App. 3d at 708 (quoting *Luu*, 323 Ill. App. 3d at 952). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 46                               II. Intended User of Slide

¶ 47 CPD argues that, since Cheneka was not the intended user of the slide, it cannot be liable for her injuries. As a local public entity, CPD is entitled to the protection of the Illinois Local Governmental and Governmental Employees Tort Immunity Act (the Act) (745 ILCS 10/1-101 *et seq*. (West 2010)).

¶ 48 In order for a municipality to have immunity under the Act, a duty must be owed under section 3-102 (745 ILCS 10/3-102 (West 2010)) for any of the subsequent immunity sections to apply. *Swett v. Village of Algonquin*, 169 Ill. App. 3d 78, 95 (1988). Section 3-102(a) states:

> "Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of *people whom the entity intended and permitted* to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." (Emphasis added.) 745 ILCS 10/3-102(a) (West 2010).

¶ 49 Thus, according to the Act, a municipality owes a duty of care only to those who are both intended and permitted users of municipal property. 745 ILCS 10/3-102(a) (West 2010). Because "the Act 'is in derogation of the common law,' " we must construe it strictly against the municipal defendant. *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 158 (1995)

(quoting *Curatola v. Village of Niles*, 154 Ill. 2d 201, 208 (1993)). "[A]n intended user of property is, by definition, also a permitted user; a permitted user of property, however, is not necessarily an intended user." *Boub v. Township of Wayne*, 183 Ill. 2d 520, 524 (1998).

¶ 50     "[T]he duty of a municipality depends on whether the use of the property was a permitted and intended use. [Citation.] Whether a particular use of property was permitted and intended is determined by looking to the nature of the property itself. [Citation.]" (Emphasis omitted.) *Vaughn*, 166 Ill. 2d at 162-63. "Intent must be inferred from the circumstances." *Sisk v. Williamson County*, 167 Ill. 2d 343, 351 (1995).

¶ 51     Defendant contends that, as a 13-year-old, Cheneka was not the intended or permitted user of the slide at the park. CPD claims, first, that this park was intended only for children 12 and younger. Second, chapter 7, section B(3)(e), of the CPD Code states:

> "Playgrounds Designated for Persons under Twelve Years of Age.
>
>     No person the age of twelve years or older shall use playground equipment designed for persons under the age of twelve years." Chicago Park District Code ch. 7, § B(3)(e) (amended July 28, 1992).

The CPD Code has the same force as a municipal ordinance. *Chicago Park District v. Canfield*, 382 Ill. 218, 223-24 (1943). Defendant claims it is immune from liability because the 13-year-old violated the CPD Code by allegedly using equipment "designed" for younger children.

¶ 52     To determine whether plaintiff was an intended user of property, we look to the property itself to determine its intended use. *Wojdyla v. City of Park Ridge*, 148 Ill. 2d 417, 426, (1992).

¶ 53     Defendant cites *Montano v. City of Chicago*, 308 Ill. App. 3d 618, 624 (1999), where this court ruled that the defendant city was not liable when an adult pedestrian, who was injured on the pavement in an alleyway, had been violating an ordinance governing the use of alleys. The court found that there is no duty owed to pedestrians on thoroughfares not intended for pedestrian traffic. *Montano*, 308 Ill. App. 3d at 625.

¶ 54     In *Prokes v. City of Chicago*, 208 Ill. App. 3d 748, 750 (1991), this court found the defendant city not liable when an adult bicyclist had been injured on a sidewalk. The city had an ordinance stating, " 'No person twelve or more years of age shall ride a bicycle upon any sidewalk in any district ***.' " *Prokes*, 208 Ill. App. 3d at 749 (quoting Chicago Municipal Code § 27-296 (1984)).

¶ 55     In both *Prokes* and *Montano*, the adult plaintiffs were not found to be intended users of the premises on which they were injured because they had violated a Chicago ordinance. However, defendant does not cite a case where a child was charged with the responsibility of knowing municipal ordinances, without a sign or other notice.

¶ 56     In addition, nothing in the record shows that even adult members of the public had any means of knowing that CPD had allegedly designated this particular park for a certain age group. Publication of ordinances is necessary so that the public can be informed of the contents of ordinances. *City of Rockford v. Suski*, 90 Ill. App. 3d 681, 685 (1980). It is a long-established principle that members of the public must have a reasonable opportunity to be informed of an ordinance so that they may conform their conduct accordingly and avoid liability under the ordinance. *Schott v. People*, 89 Ill. 195, 197-98 (1878). While the CPD Code prohibited children age 12 and over from playing on playgrounds "designed" for children younger than 12, nothing in the CPD Code stated that this particular park was designated for

children under age 12 or that this slide was designed for children under age 12. The CPD website for the park, attached to plaintiff's response to defendant's motion for summary judgment, mentions no age range, only stating: "This park features a playground and swings and green space. It is an active community park."

¶ 57    There were also no signs on the playground or any other indications that the playground was designated or designed for children under 12 years old. Plaintiff states in her affidavit that the park did not have a sign designating the playground for younger children. Robert Rejman, CPD's director of development and planning, admitted at his deposition that he did not know whether there was a sign posted. Nothing in the record shows that CPD took any measures to prevent children age 12 and older from using this park. Playgrounds are designed for children. What would prompt a 13-year-old child to observe a slide and think, "Am I really the intended user of this slide?"

¶ 58    CPD stated that plaintiff presented no case or legal authority to support the assumption that all community members are intended users of a park called a "community park." However, it is the defendant's burden to prove that it is immune from liability. *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 377-78 (1995); *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 370 (2003). In addition, CPD has pointed to no legal authority claiming that the public generally is not allowed to use public parks.

¶ 59    Plaintiff contends that CPD did not follow the administrative provisions in chapter 7, section C, of the CPD Code for designating the playground as solely for children under the age of 12 years old. However, we do not consider this issue, because issues not raised in the trial court are waived and may not be considered for the first time on appeal. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996). Nothing in plaintiff's complaint or her response to defendant's motion for summary judgment argued that CPD failed to follow its own administrative procedures under chapter 7, section C, of the CPD Code.

¶ 60    Defendant argues that placing signage is discretionary, and it has no duty to post its ordinances at every park. The CPD Code is available online; however, the Code does not state which parks have been designated for a certain age group. An ordinance is invalid if a municipality cannot prove it was published (*Suski*, 90 Ill. App. 3d at 685), and here there is no showing that it was published.

¶ 61                                    CONCLUSION

¶ 62    We must reverse the trial court's grant of summary judgment, which was granted solely on the basis that a 13-year-old was not an intended user of the slide.

¶ 63    First, the defendant does not cite a case where a child was charged with the responsibility of knowing municipal ordinances, without a sign or other notice, nor can we find such a case.

¶ 64    Second, defendant failed to inform park users of any age, by any means, that this park and the slide were intended for children younger than age 12.

¶ 65    For these reasons, we must reverse. We remand for the trial court to decide whether the slide's condition was open and obvious and whether CPD's failure to repair the slide after being notified was willful and wanton conduct.

¶ 66    Reversed and remanded.