WILLIAM LIPPER, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (1st Division)   No. 1—91—0959

Opinion filed August 3, 1992.

Barinholtz, Holzman & Gault, of Chicago (Alan Barinholtz, of counsel), for appellant.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Nina Puglia, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, William Lipper, appeals from an order granting summary judgment in favor of defendant, the City of Chicago (City), in a negligence action alleging that the City failed to maintain its sidewalks in a reasonably safe manner. On appeal, plaintiff contends that the City owed him a duty of care as an adult bicycling on a City sidewalk. For the following reasons, we affirm the judgment of the trial court.

Plaintiff testified in a deposition that his injuries occurred as follows. On June 12, 1987, at approximately 6 p.m., plaintiff left his apartment at the corner of Pine Grove Avenue and Addison Street in Chicago, placed his two-year-old son in a child's seat on the back of his bicycle, and rode toward the Lincoln Park bicycle path. The bicycle path is east of Outer Lake Shore Drive (Outer Drive) and is accessible by a ramp located at approximately 3600 North Lake Shore Drive (Inner Drive), which connects to a tunnel that runs underneath the Outer Drive.

Plaintiff rode one block north along the Pine Grove sidewalk to Addison, then turned and rode east down Addison toward the Inner

Drive. At the southwest corner of the Inner Drive and Addison, plaintiff dismounted and walked his bicycle north across Addison, waited for the light to change, then walked his bicycle east across the Inner Drive. Once across the street, plaintiff lifted his bicycle over the curb, remounted, and began riding north on the sidewalk about a half block toward the ramp. Plaintiff admitted that there were no signs designating the sidewalk as a bicycle path.

The sidewalk is about four to five feet wide and is separated from the Outer Drive by a wooden fence. In the middle of the sidewalk is a bus stop pole, leaving a narrow area for travel between the fence and the pole. As plaintiff was riding through this narrow area of the sidewalk at approximately 5 to 10 miles per hour, he felt a jolt, lost his balance, and the bicycle began tilting to the left. Plaintiff fell off onto the street, but his son was unhurt. Plaintiff did not see what the bicycle struck, but later identified from photographs taken of that area of sidewalk a raised portion of sidewalk surrounding a manhole cover as the likely cause of his fall. As a result of his fall, plaintiff suffered a fractured hip. Plaintiff stated that he was 44 years old at the time of his injury.

Plaintiff filed a negligence action against the City on December 1, 1987. In his complaint he alleged that the City breached its duty to maintain the sidewalk in a safe condition. On December 27, 1987, the City filed a motion for summary judgment, asserting its lack of duty to plaintiff. On March 6, 1991, the circuit court granted the City's motion, finding that the City had no duty to maintain its sidewalks for an adult bicycling on the sidewalk. Plaintiff's timely appeal followed.

The issue presented for review is whether the City had a duty to maintain the sidewalk for the benefit of the plaintiff, an adult bicycle rider. Plaintiff contends that the trial court erred in granting summary judgment in favor of the City because the City had a duty under the facts in this case to maintain its sidewalks for his benefit. The City claims that the sidewalk where the plaintiff fell was not intended for use by adult bicyclists and, therefore, the City owed no duty to the plaintiff.

To recover in a negligence action, a plaintiff must allege a duty owed to the plaintiff by a defendant, a breach of that duty and an injury proximately resulting from the breach. (*Torres v. City of Chicago* (1991), 218 Ill. App. 3d 89, 578 N.E.2d 158.) Whether the city owed plaintiff a duty of care is a question of law properly decided on a motion for summary judgment. *Mason v. City of Chicago* (1988), 173 Ill. App. 3d 330, 527 N.E.2d 572.

■ The question of whether the City is liable to the plaintiff is governed by the limitation contained in section 3—102(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1989, ch. 85, par. 3—102(a)), which provides as follows:

> "Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." Ill. Rev. Stat. 1989, ch. 85, par. 3—102(a).

The question, therefore, is whether the City "intended and permitted" the use of the sidewalk by the plaintiff, an adult bicyclist. This issue was recently addressed in *Prokes v. City of Chicago* (1991), 208 Ill. App. 3d 748, 567 N.E.2d 592. There, this court examined section 27—296 of the Municipal Code of Chicago (now section 9—52—020(b) (Chicago Municipal Code §9—52—020(b) (1990)), which provides:

> "(b). No person 12 or more years of age shall ride a bicycle upon any sidewalk in any district, unless such sidewalk has been officially designated and marked as a bicycle route."

In light of the above ordinance, the *Prokes* court determined that an adult bicyclist is neither an intended nor permitted user of the sidewalk. Therefore, the court held, the City had no duty to an adult bicycling on a sidewalk who injured himself upon dismounting. The court stated:

> "It is not claimed that the plaintiff was under 12 years of age; and it was shown by affidavit that the area of the sidewalk where the plaintiff was injured was not an officially designated and signed bicycle route. It necessarily follows that the plaintiff was violating the ordinance when he was injured. It is inconceivable to us, therefore, that it may be held that the plaintiff was one 'whom the [city] intended and permitted to use' the sidewalk by riding a bicycle." *Prokes*, 208 Ill. App. 3d at 750.

■ Plaintiff argues that the present case is distinguishable from *Prokes*. In reliance on *Marshall v. City of Centralia* (1991), 143 Ill. 2d 1, 570 N.E.2d 315, plaintiff argues that the *Prokes* court improperly

relied solely on the existence of the anti-bicycling ordinance in finding that the City had no duty. In *Marshall*, our supreme court inferred from the facts of that case that the plaintiff, injured while walking on a parkway, was an intended user of the parkway because parkways have been historically used by pedestrians in limited instances. *Marshall*, 143 Ill. 2d at 9.

Plaintiff argues that a bicyclist is similarly an intended user of this particular sidewalk because one must use the sidewalk to reach the bicycle path on the other side of Lake Shore Drive. Plaintiff contends, therefore, that the trial court should have considered the fact that people ride their bicycles on this particular sidewalk and made an inference from this fact that he was an intended user of the sidewalk.

However, in *Marshall*, there was no municipal ordinance prohibiting the plaintiff from walking onto the parkway. In the present case, the intent of the City need not be inferred because a municipal ordinance explicitly prohibits adult bicycling on the sidewalks. (See also *Torres*, 218 Ill. App. 3d at 94 (court held pedestrian injured in the street while in the immediate zone of travel to his legally parked car was an "intended and permitted" user, noting that "[p]laintiff's use of the street was not in violation of any ordinance").) Because of the ordinance, the plaintiff here is not a "permitted" user of the sidewalk. The record reveals that plaintiff walked his bicycle across Addison, and again across the Inner Drive. Plaintiff stated that there were no signs posted designating the area of the sidewalk where his injury occurred as a bicycle path.

Plaintiff's further reliance upon *Larson v. City of Chicago* (1986), 142 Ill. App. 3d 81, 491 N.E.2d 165, is unavailing. In *Larson*, the plaintiff was injured while roller-skating on a public sidewalk. The *Larson* court held that the City owed a duty to maintain its sidewalks in a condition reasonably safe for all foreseeable users, recognizing that roller-skating is by ordinance, without limitation to any persons, a contemplated use of public sidewalks in Chicago. (*Larson*, 142 Ill. App. 3d at 85-86.) The plaintiff in *Prokes* similarly relied on *Larson*, and the court there distinguished the case noting that "bicycle riding by adults is expressly prohibited and is, therefore, not a contemplated or permitted use by the plaintiff." (*Prokes*, 208 Ill. App. 3d at 750.) We agree.

Finally, plaintiff contends that the ordinance raises "serious issues of constitutional law." However, the record reveals that the trial court did not decide any issues of constitutional law. Where the record fails to show that a matter urged on appeal was decided by the trial court, the issue is not properly preserved for review and is there-

fore deemed waived. *Jones v. Board of Fire & Police Commissioners* (1984), 127 Ill. App. 3d 793, 469 N.E.2d 393.

For the above reasons, we affirm the judgment of the trial court.

Affirmed.

O'CONNOR and MANNING, JJ., concur.