# Illinois Official Reports

## Appellate Court

---

### *Ramirez v. City of Chicago*, 2019 IL App (1st) 180841

---

| | |
|---|---|
| Appellate Court Caption | MONICA RAMIREZ and ARLIE RAMIREZ, Plaintiffs-Appellants, v. THE CITY OF CHICAGO, Defendant-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-18-0841 |
| Filed | April 19, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-L-3890; the Hon. Patricia O'Brien Sheahan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Kirsten M. Dunne and Bennett J. Baker, of Goldberg Weisman Cairo, of Chicago, for appellants.<br><br>Edward N. Siskel, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Suzanne M. Loose, Assistant Corporation Counsel, of counsel), for appellee. |
| Panel | JUSTICE CONNORS delivered the judgment of the court, with opinion.<br>Presiding Justice Delort concurred in the judgment and opinion.<br>Justice Harris dissented, with opinion. |

**OPINION**

¶ 1 Plaintiffs, Monica Ramirez and Arlie Ramirez, appeal the circuit court's grant of summary judgment to defendant, the City of Chicago (City), on plaintiffs' claims for negligence and loss of consortium. Plaintiff Monica Ramirez (Ramirez) had alleged that the City failed to keep a street in a reasonably safe condition after she tripped and fell in a large hole. On appeal, plaintiffs contend that summary judgment was improper where Ramirez was an intended and permitted user of the street where she fell. We affirm.

¶ 2 The record reveals that on the evening of April 23, 2015, Ramirez went to her parents' home at 2856 North Mason Avenue in Chicago to drop her daughter off to spend the night. Ramirez parked her car, a 2011 Mitsubishi Endeavor, on Mason, slightly south and on the same side of the street as her parents' home. The passenger side of the car abutted the curb. As she left her parents' home, Ramirez walked toward the front of the car and stepped off the curb with her left foot, whereupon her left ankle twisted and she fell into a pothole. According to a claims investigator with the City, the pothole was approximately five feet long. It is undisputed that Ramirez's car had extended into a yellow-painted area indicating a no-parking zone due to a fire hydrant. However, part of Ramirez's car and the pothole itself were within an area where it was legal to park.

¶ 3 In her complaint, Ramirez asserted that the City breached its duty to keep and maintain the street in a reasonably safe condition for the safety of its users and she sustained personal and pecuniary damages as a result. Ramirez's husband, Arlie Ramirez, alleged a loss of consortium claim.

¶ 4 Subsequently, the City moved for summary judgment, contending that the City did not owe Ramirez a duty of care because she was neither an intended nor permitted user of the street when she encountered the pothole. The City asserted that the scope of a municipality's duty to maintain its property is limited by the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/3-102(a) (West 2014)), which states that a plaintiff must be a legally intended and permitted user of the property before liability is imposed. The City asserted that the threshold inquiry in determining whether Ramirez was an intended and permitted user of the street was whether her car was illegally parked. The City maintained that Ramirez was illegally parked under a state law that prohibited parking within 15 feet of a fire hydrant. The City stated that Ramirez's car was 15 feet, 9 inches, long and approximately 5 feet, 9 inches, of her car was within a 15-foot, yellow-painted no-parking zone. As a result, the City did not owe a duty to Ramirez. The City requested that the court dismiss the case in its entirety with prejudice.

¶ 5 In response, plaintiffs contended that the location of the defect was of prime importance and, here, the pothole was entirely located in an area where parking was legally permitted. Thus, as to the part of the street where the pothole was located, pedestrians were intended and permitted users for the purposes of entering and exiting parked vehicles. Further, the front of Ramirez's vehicle was within the zone that the City designated for street parking, which was notable because Ramirez was injured while stepping in front of her car.

¶ 6 The court denied summary judgment after a hearing. In an oral ruling, the court noted that the entirety of the pothole was located in the part of the curb where it was legal for cars to park. Further, Ramirez could have encountered the same pothole if she were driving a smaller car and parked entirely in a legal parking zone or if her car had been parked legally and she walked

behind her car. The court stated that granting summary judgment would create a loophole wherein the City could fail to repair a pothole that it would have to repair in most other circumstances.

¶ 7 The City filed a motion to reconsider, noting that it had an ordinance that mirrored the state law that prohibited parking within 15 feet of a fire hydrant. The City also discussed two additional cases. In the first case, *Montano v. City of Chicago*, 308 Ill. App. 3d 618 (1999), no duty was owed to a plaintiff who violated a municipal ordinance. In the second case, *Greene v. City of Chicago*, 209 Ill. App. 3d 311 (1991), the court rejected the plaintiff's argument that the City owed him a duty because the subject pothole was located in an area of the street where legal parking was permitted. At the hearing on the motion to reconsider, plaintiffs' counsel conceded that Ramirez's car was illegally parked.

¶ 8 Ultimately, the court reconsidered its denial of summary judgment and found that the City owed no duty to Ramirez under the Act. In its oral ruling, the court noted that plaintiffs conceded that Ramirez parked in a place that was expressly prohibited by ordinance. The court stated that Ramirez's violation removed her from the scope of intended and permitted users. The court granted the City's motion for summary judgment and dismissed the case with prejudice.

¶ 9 On appeal, plaintiffs contend that summary judgment should be reversed because Ramirez was an intended and permitted user of the area of the street where she fell.

¶ 10 Summary judgment is proper when, viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014); *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). We review the circuit court's summary judgment ruling *de novo*. *Tunca v. Painter*, 2012 IL App (1st) 110930, ¶ 13.

¶ 11 To recover in an action for negligence, which Ramirez seeks to do here, "a plaintiff must establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury to the plaintiff proximately caused by the breach." (Internal quotation marks omitted.) *Swain v. City of Chicago*, 2014 IL App (1st) 122769, ¶ 14. Whether a duty of care exists is a question of law to be determined by the court, and so it may be resolved on a motion for summary judgment. *Wojdyla v. City of Park Ridge*, 148 Ill. 2d 417, 421 (1992). A municipality's duty to maintain its property is limited by section 3-102 of the Act (*Sisk v. Williamson County*, 167 Ill. 2d 343, 346-47 (1995)), which states in part:

> "[A] local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used ***." 745 ILCS 10/3-102(a) (West 2014).

¶ 12 Thus, per the Act, "a municipality owes a duty of ordinary care only to those who are both intended and permitted users of municipal property." *Gutstein v. City of Evanston*, 402 Ill. App. 3d 610, 616 (2010). An intended user of property is, by definition, also a permitted user, but a permitted user of property is not necessarily an intended user. *Id.* at 616-17. Because the

- 3 -

Act " 'is in derogation of the common law,' " we strictly construe it against the municipality. *Sisk*, 167 Ill. 2d at 347 (quoting *Curatola v. Village of Niles*, 154 Ill. 2d 201, 208 (1993)).

¶ 13    Our task is to determine whether Ramirez was an intended and permitted user of the street where she fell. Generally, because pedestrians are not intended users of streets, a municipality does not owe a duty of reasonable care to pedestrians who try to cross a street outside of crosswalks. *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 158 (1995). As an exception to this rule, a pedestrian entering or exiting "a legally parked vehicle" is an intended and permitted user of the street, and so a municipality has a duty "to maintain the street area immediately around lawfully parked vehicles for those exiting and entering them." *Curatola*, 154 Ill. 2d at 213-14.

¶ 14    Ramirez concedes that she was parked illegally—she was parked within 15 feet of a fire hydrant. See Chicago Municipal Code § 9-64-100(a) (amended May 28, 2014). Still, Ramirez urges this court to overlook her illegal parking spot, contending that, when she fell, she was entirely within the legal parking span of the street and the pothole was entirely confined to the parking-permitted section of the street. Ramirez argues that she was an intended user because she was using an appropriate section of the street for an appropriate purpose. According to Ramirez, the location of the subject defect should control the outcome.

¶ 15    In determining whether someone was an intended and permitted user of the street, our focus is the intent of the municipality and not the intent of the particular person traveling over the subject property. *Wojdyla*, 148 Ill. 2d at 425-26. "Whether a particular use of property was permitted and intended is determined by looking to the nature of the property itself." (Internal quotation marks omitted.) *Swain*, 2014 IL App (1st) 122769, ¶ 15. Further, " '[i]ntent must be inferred from the circumstances' " (*Gutstein*, 402 Ill. App. 3d at 617 (quoting *Sisk*, 167 Ill. 2d at 351)) and the determination of whether a pedestrian is an intended user is fact-specific (*id.* at 619). We consider whether the municipality intended that the specific plaintiff use the property as she did. See *Vaughn*, 166 Ill. 2d at 163 (existence of duty depends on whether the municipality intended that "the plaintiff-pedestrian walk in that part of the street where the injury occurred and permitted the plaintiff-pedestrian to do so"); *Montano*, 308 Ill. App. 3d at 622 ("in the present case, we must determine whether Montano [(the plaintiff)] was an intended user of the alley when he was injured while unloading the couch from his truck"); *Torres v. City of Chicago*, 218 Ill. App. 3d 89, 93 (1991) (other cases were distinguishable from the case at hand because "the plaintiff in each case was clearly not an intended or permitted user of the street"); *Prokes v. City of Chicago*, 208 Ill. App. 3d 748, 749 (1991) ("[t]he question before us *** is whether the City of Chicago 'intended and permitted' the use of the sidewalk *by the plaintiff*" (emphasis in original)). This court highlighted the focus on the particular plaintiff at hand in *Greene*, 209 Ill. App. 3d at 313-14, where a plaintiff who fell into a pothole where parking was allowed was nonetheless not an intended and permitted user of the street. The court explained that the plaintiff was not en route to his vehicle but was crossing the street outside the crosswalk to go to a friend's house. *Id.* The question is not whether someone else, perhaps someone with a shorter car, could be an intended and permitted user of the street area where Ramirez fell. Instead, the question is whether Ramirez was an intended and permitted user of that area.

¶ 16    "The primary lanes of the street are intended exclusively for vehicles, subject to crosswalks and other specifically indicated pedestrian areas ***." *DeMambro v. City of Springfield*, 2013 IL App (4th) 120957, ¶ 25. Further, unless otherwise indicated, the area near the curb is

intended for parked vehicles and pedestrians who are accessing their vehicles. *Id.* Ramirez seeks to qualify as the latter, but we cannot overlook that she was near the curb to access her illegally parked car. Our cases indicate that a pedestrian near the curb to access her car is an intended user only if the car is legally parked. See *Curatola*, 154 Ill. 2d at 213 ("[t]he narrow exception *** concerns only the permitted and intended use of the street immediately around a legally parked vehicle"); *DeMambro*, 2013 IL App (4th) 120957, ¶ 25 ("plaintiff was clearly intended to be in the area around her vehicle, which, as the City concedes, was lawfully parked near the curb"); *Grove v. City of Park Ridge*, 240 Ill. App. 3d 659, 661-62 (1992) (municipality's duty extends "only to those pedestrians walking to or from the curb area, going to or from a legally parked vehicle"); *Di Domenico v. Village of Romeoville*, 171 Ill. App. 3d 293, 296 (1988) (in finding that municipality owed duty to a plaintiff who was injured while walking to his car, noting that the plaintiff "legally parked in a location used for such purpose"). Further underscoring that a plaintiff must park legally, in *Curatola*, 154 Ill. 2d at 212, the court criticized another decision, *Vlahos v. City of Chicago*, 198 Ill. App. 3d 911 (1990), because it did not recognize that the plaintiff there was illegally parked, which should have been a salient fact in determining that the plaintiff was not an intended and permitted user of the street. Though none of these cases expressly considered the scenario of an illegally parked vehicle, the cases instruct that a plaintiff must be legally parked to be an intended and permitted user of the street area around her vehicle.

¶ 17    More generally, that plaintiff violated an ordinance precludes her from being an intended and permitted user of the street area where she fell. See *Torres*, 218 Ill. App. 3d at 93 ("it would be inconceivable to find that a plaintiff injured while engaging in behavior in violation of a municipal ordinance is an intended and permitted user of the street"). We find *Montano* instructive on this issue. There, the plaintiff parked his truck in an alley, and when he stepped off, he twisted his foot on uneven pavement and fell down. *Montano*, 308 Ill. App. 3d at 620. The court found that the plaintiff was not an intended user of the alley because, at the time he was injured, he was violating an ordinance that required vehicles to leave at least 10 feet unobstructed while parked in an alley. *Id.* at 624. Ramirez points out that the *Montano* court went on to discuss another reason why the plaintiff was not an intended user of the alley, but the violation of the ordinance stood as an independent basis for the outcome. See *id.* at 625 ("We also hold that, even if Montano did not violate [the ordinance], he would not be an intended user of the alley."). In another decision, *Prokes*, 208 Ill. App. 3d at 749-50, the court found that the adult plaintiff was not an intended and permitted user of a sidewalk because at the time he was injured, the plaintiff was violating an ordinance that prohibited bicycle riding by adults on sidewalks. At the same time, we note that violating an ordinance does not automatically preclude a plaintiff from being an intended and permitted user of a given property. For example, in *Bowman v. Chicago Park District*, 2014 IL App (1st) 132122, notwithstanding an ordinance providing for a 12-year-old age limit for playground equipment, a 13-year-old was an intended user of a slide. In that case, there was nothing that showed that adults, let alone children, had any way of knowing that the park district had designated the park for a particular age group or that the subject slide was designed for children under age 12. *Id.* ¶ 56. Further, there was no authority for charging a child with responsibility of knowing municipal ordinances. *Id.* ¶ 63. Those circumstances do not exist here, where Ramirez has conceded she was illegally parked.

¶ 18 In reaching our conclusion that Ramirez was not an intended and permitted user of the street area where she fell, we briefly comment on *Curatola v. Village of Niles*, 324 Ill. App. 3d 954 (2001) (*Curatola II*), which Ramirez cites to assert that a plaintiff can be an intended and permitted user despite parking improperly. As background, *Curatola II* was an appeal after a trial that followed our supreme court's decision in *Curatola*, 154 Ill. 2d 201 (*Curatola I*). *Curatola I* reversed a grant of summary judgment, finding that the plaintiff, who had stepped off his truck and twisted his foot in a pothole and fell, was an intended and permitted user of the street. *Id.* at 215-16. The court recounted that the plaintiff asserted that evidence presented to the circuit court "established that his vehicle was legally parked" at the time he fell, and the municipality "concede[d] that no evidence was presented contravening this fact." *Id.* at 205. As such, the court stated it would "consider [the plaintiff's] vehicle as being legally parked when he fell." *Id.* at 205-06.

¶ 19 After a remand and subsequent trial, the jury returned a verdict for the plaintiff. *Curatola II*, 324 Ill. App. 3d at 955. On appeal, the municipality asserted in part that it did not owe a duty of care to the plaintiff because the evidence established at trial that the plaintiff's vehicle was facing the wrong direction and so was illegally parked. *Id.* at 958-59. In upholding the verdict, the court stated that the fact that the plaintiff's vehicle was facing the wrong direction "was made known to the supreme court" and "was of no consequence to its decision on the issue of whether [the] plaintiff was an 'intended and permitted' user of the street around his vehicle." *Id.* at 959-60. This statement is puzzling, given that the supreme court's opinion did not describe how the plaintiff's vehicle was parked and considered the vehicle as "being legally parked" when the plaintiff fell. See *Curatola I*, 154 Ill. 2d at 205-06. Further, *Curatola II* did not mention that the plaintiff had violated an ordinance. We also note that no published decision has cited *Curatola II* to find that an illegally parked plaintiff was still an intended and permitted user of the street. *Curatola II* does not change our conclusion that Ramirez was not an intended and permitted user of the street area where she fell because she was parked illegally. Thus, the City did not owe a duty to Ramirez under the Act.

¶ 20 Lastly, we also affirm the dismissal of Arlie Ramirez's claim for loss of consortium. "A cause of action for loss of consortium is a tort action based on an injury to the personal relationship established by the marriage contract." *Brown v. Metzger*, 118 Ill. App. 3d 855, 858 (1983). While loss of consortium is a separate cause of action from the impaired spouse's claim, it derives from that claim. *Id.* When the impaired spouse's claim fails as a matter of law, the deprived spouse's claim for loss of consortium must also fail. *Id.* at 858-59. Here, because Ramirez's negligence claim fails as a matter of law, her husband's loss of consortium claim also fails.

¶ 21 For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 22 Affirmed.

¶ 23 JUSTICE HARRIS, dissenting:

¶ 24 Ramirez was injured when she stepped off the curb in front of her parked car and her left ankle twisted as she fell into a five-foot-long pothole. It is undisputed that parking was allowed on the street where she parked and that the pothole into which she fell was located entirely within the parking zone. It is also not disputed that most of her car, including the front half, was within the parking zone.

¶ 25      The majority concludes that, because Ramirez parked within 15 feet of a fire hydrant in violation of a municipal ordinance, she was not lawfully parked. Citing *Curatola*, the majority finds that the City's duty to pedestrians who walk on the street around their parked cars extends only to those entering or exiting a legally parked vehicle. *Curatola*, however, simply states that because the plaintiff was lawfully parked he was thus "a permitted user of the street." *Curatola*, 154 Ill. 2d at 215. The court did not find that only pedestrians entering or exiting legally parked cars are permitted users. Our supreme court in *Curatola* had no occasion to consider the issue we have here: whether a pedestrian who was injured getting to her car by a defect located completely within an area permitted for parking is an intended and permitted user of the street, even though a portion of her parked car extended into a no-parking zone.

¶ 26      Furthermore, the majority, relying on *Montano*, finds that Ramirez was not a permitted and intended user of the street because she violated a municipal ordinance. However, in *Montano* and the cases cited therein for its holding, the plaintiffs' use of the property could not, under any circumstances, be permitted. See *Montano*, 308 Ill. App. 3d at 624 (driving an 8-foot-wide truck in an alley less than 16 feet wide, where the ordinance required vehicles using the alley to leave at least 10 feet unobstructed); *Lipper v. City of Chicago*, 233 Ill. App. 3d 834, 838 (1992) (riding a bicycle on the sidewalk where an ordinance explicitly prohibits adult bicycling on the sidewalks); *Prokes*, 208 Ill. App. 3d at 749-50 (same). *Montano*, *Lipper*, and *Prokes* are distinguishable because parking on the street where Ramirez parked was permitted. I do not believe the violation of an ordinance here is determinative. Even the majority acknowledges that a mere violation does not automatically preclude the violator from being an intended and permitted user.

¶ 27      Ramirez's use of the street to park her car was a permissible use of the street. She walked around the front of her car, which was located on the part of the street where cars are intended to park and pedestrians are intended to walk, and encountered the pothole in that area. An individual exiting or entering her parked vehicle "is an intended user of the space around [her] car." *Wojdyla*, 148 Ill. 2d at 425. As our supreme court found, "the question of whether a municipality owes a duty *** depends on whether the municipality intended that the plaintiff-pedestrian walk in that part of the street where the injury occurred and permitted the plaintiff-pedestrian to do so." *Vaughn*, 166 Ill. 2d at 163. For the foregoing reasons, I respectfully dissent from the majority's determination to affirm the circuit court's grant of summary judgment in favor of the City.